## MFA INSURANCE COMPANY, Appellant,

v.

## Thomas C. CARROLL, and Jack R. Underwood, Jr., Appellees.

Court of Appeals of Kentucky.

March 8, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court April 24, 1985.

Julian E. Kennamer, Stiles & Bowman, Louisville, for appellant.

Thomas C. Carroll, Jack R. Underwood, Jr., Louisville, for appellees.

Before HAYES, Chief Judge, and COOPER and GUDGEL, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Jefferson Circuit Court. The court awarded the attorneys for the plaintiff in a tort action a fee for recovering reimbursement of BRB on behalf of a reparations obligor. Appellant, the insurer, contends that the court erred by finding that appellees are entitled to an award of an attorneys' fee and by awarding an excessive fee. We agree with appellant's first contention. Hence, we reverse the court's judgment without addressing appellant's remaining contention.

On March 12, 1979, Anthony Bowman was killed as a result of a head-on collision. The decedent's vehicle was insured by appellant MFA Insurance Company (MFA). The driver of the other vehicle involved was insured by State Farm Mutual Automobile Insurance Company (State Farm). Appellees were employed by the decedent's personal representative to prosecute a wrongful death action against State Farm's insured.

Both insurers investigated the collision independently and reached the same conclusion: The accident was caused by negligence on the part of State Farm's insured. On March 12, 1979, MFA commenced paying BRB to the decedent's estate. On May 31, 1979, MFA notified State Farm that it

would probably assert a subrogation claim. On August 24, 1979, State Farm established a settlement authority in regard to the claim of $75,000. This sum included a reserve of $10,000 to satisfy MFA's subrogation claim.

MFA inquired whether State Farm would honor its subrogation claim shortly after it had paid the decedent's estate the applicable BRB policy limit of $10,000. State Farm responded to MFA's inquiry on February 18, 1980, indicating that MFA's claim would be honored after a tort action which had been filed by the decedent's estate on February 2, was "concluded."

On March 11, 1980, MFA, pursuant to KRS 304.39–070(3)(ii), submitted an application seeking arbitration of its subrogation claim. State Farm filed a response to the application requesting that the arbitration proceedings be held in abeyance until such time as the pending tort action was resolved.

On July 31, 1980, the attorney State Farm had employed to defend the tort action wrote appellees a letter which stated as follows:

I have been authorized by my clients to restate their offer to pay to you the $65,000.00 for settlement of the claim of the estate as well as the $10,000.00 PIP benefits for a total of $75,000.00 and the Court costs in this case.

On August 4, 1980, appellees accepted State Farm's offer. It is undisputed, however, that MFA did not employ appellees to represent its interests, and that appellees did not negotiate with State Farm on MFA's behalf. In fact, appellees told State Farm to hold the $10,000 check which had been made payable to MFA since they were "not authorized" to act on its behalf.

On March 10, 1981, appellees filed this action against MFA seeking an award of an attorneys' fee equal to one-third of the $10,000 MFA recovered. After evidence was adduced, the court adjudged that appellees were entitled to a fee and that a sum equal to one-third of MFA's recovery was a reasonable fee. This appeal followed.

First, MFA argues the court's finding that appellees are entitled to the award of an attorneys' fee is clearly erroneous, and not supported by the evidence. We agree.

The precise issue we must decide is whether attorneys for a secured person are entitled to the award of an attorneys' fee pursuant to KRS 304.39–070(5) in a case where the reparations obligor for the secured person against whom the fee is awarded elects to arbitrate its subrogation claim, and does not intervene as a party in its insured's tort action. We conclude that they are not.

The applicable statute, KRS 304.39–070(5), provides as follows:

(5) An attorney representing a secured person in any action filed under KRS 304.39–060 shall be entitled to a reasonable attorneys' fee in the event that reparation benefits paid to said secured person by that secured person's reparation's obligor are reimbursed by any insurance carrier on behalf of a tortfeasor who is the defendant in any such action filed by the said secured person or in the event such potential "action" is settled by said potential tortfeasor's insurance carrier on his behalf prior to the filing of any such suit.

In construing this statute in *Woodall v. Grange Mutual Casualty Company*, Ky., 648 S.W.2d 871, 873 (1983), the Supreme Court stated:

The language of the statute, though recondite, clearly mandates a reasonable attorney's fee for the secured person's attorney (here, Woodall) when that attorney, in an action against or a settlement with a tort-feasor (here an action against the Furrows), recovers for the reparation's obligor (here Grange) a reimbursement of benefits, previously paid by the reparation's obligor to the secured person, from the tort-feasor's insurance carrier. Here, Woodall is entitled to a reasonable attorney's fee because he was the attorney for the Propsts in a tort action against the Furrows in which the amount recovered included the $3,724.91

paid by the Furrows' insurance carrier to Grange for reimbursement of benefits.

*Woodall,* however, is distinguishable from the instant action. There the insurance company asserted its subrogation claim by intervening as a party in its insured's tort action. Moreover, the insured's attorney actually provided direct services which assisted the insurer in securing reimbursement. Here, by contrast, the insurer elected to avail itself of the arbitration option provided by KRS 304.39–070(3)(ii). It did not intervene as a party in its insured's tort action. Moreover, MFA prosecuted its subrogation claim on its own during the period prior to the settlement of the wrongful death action, and neither employed nor contacted appellees about the claim. Rather, MFA dealt directly with State Farm. Finally, appellees did not purport to represent MFA's interests during settlement negotiations with State Farm.

True enough, by effecting a settlement of the estate's tort action within State Farm's policy limits appellees did indirectly provide services which benefited MFA since the strictures as to priority set forth in KRS 304.39–140 and recognized in KRS 304.39–070(4) were satisfied, and funds thereby became available with which to pay MFA's claim. Nevertheless, we fail to perceive that the indirect benefit conferred on MFA as a result of State Farm's settlement within policy limits justifies an award of an attorneys' fee. As we view the matter, neither the legislature nor the Supreme Court by its decision in *Woodall v. Grange Mutual Casualty Company, supra,* intended that KRS 304.39–070(5) should be interpreted so broadly.

After all, it is undisputed that State Farm established a reserve to pay MFA's claim long before appellees even filed a tort action, and refrained from paying the claim only because the provisions of the no-fault statute prohibit payment of an insurer's subrogation claim until any pending tort action is concluded in a manner which leaves unpaid policy funds available for that purpose. We hold, therefore, that in instances such as this where a reparations

obligor has elected to pursue its KRS 304.-39–070 subrogation rights by applying for arbitration rather than by intervening as a party in its insured's pending tort action, and has not employed the attorneys for the insured to represent its interests, those attorneys are not entitled to the award of an attorneys' fee under KRS 304.39–070(5) merely because the insurer's subrogation claim is subsequently paid. It follows that the court's finding that appellees are entitled to an award of an attorneys' fee is clearly erroneous. Our conclusion to this point obviates the need to address appellant's remaining contention as to whether the fee awarded was excessive.

The court's judgment is reversed and remanded with directions to enter a new judgment dismissing appellees' complaint.

All Concur.